# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTHANN BAUSCH, MARCIA DAY DONDIEGO, JUDITH REED, RHODA EMEFA AMEDEKU, DANIEL STROHLER, SHARON STROHLER, BERNARD BOAKYE BOATENG, LORI RIEKER and LISA DANNER,<br><br>Plaintiffs,<br><br>v.<br><br>LEHIGH COUNTY BOARD OF ELECTIONS, NORTHAMPTON COUNTY BOARD OF ELECTIONS and LEIGH M. CHAPMAN, in her capacity as Secretary of the Commonwealth of Pennsylvania<br><br>Defendants. | JURY TRIAL DEMANDED<br><br>Civ. No. _____ |

## COMPLAINT FOR DECLARATORY AND EMERGENCY INJUNCTIVE RELIEF

AND NOW, come the Plaintiffs, by and through their attorneys, Mobilio Wood, and hereby submits the instant Complaint for Declaratory and Emergency Injunctive Relief, and in support thereof, aver as follows:

## I.     INTRODUCTION

1.      Defendants, Lehigh County Board of Elections ("Lehigh Elections Board") and Northampton County Board of Elections ("Northampton Elections

Board")(collectively "Election Boards") are poised to certify the results of the May 17, 2022, primary election without counting 260 votes from registered, eligible Democrat voters from Lehigh and Northampton County's State Senate District 14, because those voters mistakenly did not place their mail-in ballot in a "secrecy envelope" or because their mail-in ballot was mailed prior to 8 p.m. on election day, but, through no fault of their own, was not received by the Election Boards until after 8 p.m. on election day. The impending disenfranchisement will cause irreparable harm.

2. Plaintiffs Ruthann Bausch, Marcia Day Dondiego, and Judith Reed are among a group of 23 Democrat Northampton County voters and Rhoda Emefa Amedeku is among a group of 94 Democrat Lehigh County voters ("Plaintiffs 1") in State Senate District 14 whose timely-submitted mail-in ballots for the May 17, 2022, election will not count because of the meaningless technicality that the ballots were not placed in a "secrecy envelope"[1] before being sent to the Election Boards. The presence or absence of the "secrecy envelope" is immaterial to the

---

[1] (a) General rule.--At any time after receiving an official mail-in ballot, but on or before eight o'clock p.m. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "official election ballot." See 25 Pa. Stat. 3150.16(a).

integrity of the ballot, or any other important facet of the voting and tabulation process.

3. Plaintiffs Daniel Strohler, Sharon Strohler, Bernard Boakye Boateng and Lori Reiker are among a group of 25 Democrat Northampton County voters and Lisa Danner[2] is among a group of 118 Democrat Lehigh County voters ("Plaintiffs 2") in State Senate District 14 whose timely-mailed ballots for the May 17, 2022, election will not count because the United States Postal Service ("USPS") failed to prioritize said ballots and failed to deliver them to the Elections Offices in time to be counted. The failure of a third-party governmental agency to deliver ballots on time, and the failure of the Secretary of the Commonwealth to notify voters of the possibility of said delay is immaterial to the integrity of the ballot, or any other important facet of the voting and tabulation process.

4. Plaintiffs 1 and 2 are duly registered voters who timely applied for and returned mail-in ballots to the Election Boards. There are no indications or allegations of any impropriety, fraud or other defect in those ballots.

5. Rejecting the aforementioned 260 ballots for an immaterial defect violates the Fourteenth Amendment to the United States Constitution and the Materiality Provision of the Civil Rights Act, 52 U.S.C. 10101(a)(2)(B). Absent an

---

[2] True and correct copies of the Signed Declarations of all Plaintiffs are attached hereto as Exhibits 1-10.

injunction from this Court, Plaintiffs will suffer imminent and irreparable harm because the Election Boards will shortly certify the election results without Plaintiffs' votes.  Therefore, Plaintiffs seek emergency relief to enjoin briefly the certification until such time as this Court can consider the merits of the Plaintiffs' federal claims.

## II. JURISDICTION AND VENUE

6.      This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Civil Rights Act, 52 U.S.C. § 10101.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights cases).

8.      Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

9.      Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and Defendants, Lehigh County Board of Elections, and Northampton County Board of Elections, conduct business in this district.

## III.    PARTIES

10.    Plaintiffs 1 are Democrat Northampton and Lehigh County voters in State Senate District 14 facing disenfranchisement by the Election Boards solely because their timely-received mail ballot lacked a "secrecy envelope".  For the

May 17, 2022, Plaintiffs 1 properly requested a mail-in ballot, marked their ballot, inserted it into the outer envelope on which they signed the declaration.

11. Plaintiffs 2 are Democrat Northampton and Lehigh County voters in State Senate District 14 who are in danger of disenfranchisement by the Election Boards because the USPS failed to deliver their ballots by 8 p.m. on May 17, 2022. Plaintiffs 2 timely marked their ballots, inserted them into the secrecy envelope, placed both into the outer envelope, signed the declaration and placed the entire packet in the mail on or before May 16, 2022. Plaintiffs 2 learned that the USPS failed to deliver their ballots to the Lehigh County Elections Board in time to be counted.

12. All Plaintiffs:

a. Are over age 18, U.S. citizens, and residents of Pennsylvania and their districts for more than 30 days, making them qualified electors, legally entitled to vote under the United States and Pennsylvania constitutions;

b. Voted a single ballot in the May 17, 2022, election and did so only by mail;

c. Timely mailed and/or deposited their ballot in a qualified dropbox for the Elections Boards;

d. Cast a mail ballot with one, and only one, identified "defect"— namely, Plaintiff 1's ballots did not contain a "secrecy envelope" and Plaintiff 2's ballots were not delivered by the USPS to the respective Elections Board prior to 8 p.m. on May 17, 2022;

e. Cast ballots that were otherwise properly completed and returned; and

f.     Did not have their ballot counted due solely to the aforementioned singular defect.

13.     Defendants Election Boards have issued notice that 260 mail-in ballots, including each of Plaintiffs' ballots, will be disqualified and excluded from tabulation due to the aforementioned issues when the election is certified.

14.     Defendant Lehigh County Board of Elections is the executive agency established under the Pennsylvania Election Code with jurisdiction over the conduct of primaries and elections and manages all aspects of elections in Lehigh County. See 25 Pa. Stat. Ann.§ 2641. The Board's authority includes canvassing and computing the votes cast in each of the county's election districts and then certifying the results of each race to the Commonwealth of Pennsylvania's Secretary of State. See 25 Pa. Stat. Ann. § 2642.

15.     Defendant Northampton County Board of Elections is the executive agency established under the Pennsylvania Election Code with jurisdiction over the conduct of primaries and elections and manages all aspects of elections in Northampton County. See 25 Pa. Stat. Ann.§ 2641. The Board's authority includes canvassing and computing the votes cast in each of the county's election districts and then certifying the results of each race to the Commonwealth of Pennsylvania's Secretary of State. See 25 Pa. Stat. Ann. § 2642.

16.     Defendant Leigh M. Chapman ("Chapman") is the acting Secretary of the Commonwealth, which is charged with, *inter alia*:

(f) To receive from county boards of elections the returns of primaries and elections, to canvass and compute the votes cast for candidates and upon questions as required by the provisions of this act; to proclaim the results of such primaries and elections, and to issue certificates of election to the successful candidates at such elections, except in cases where that duty is imposed by law on another officer or board.

See 25 Pa. State Ann. 201, et seq.

**IV.    FACTS**

17.    Plaintiffs 1 consist of five (5) of more than 117 Democrat voters in Lehigh and Northampton Counties in State Senate District 14 whose mail ballots in the May 17, 2022, election, whose votes were not counted solely because these voters did not include a "secrecy envelope" with their ballot.

18.    Plaintiffs 2 consist of six (6) of more than 143 Democrat voters in Lehigh and Northampton Counties in State Senate District 14 whose mail ballots in the May 17, 2022, election, whose votes were not counted solely because their timely mailed ballots were not delivered by the USPS until after 8 p.m. on May 17, 2022.

19.    Plaintiffs 2's ballots were however received by Election Boards prior to the date that military and overseas ballots were due, and prior to the date that the Election Boards were to submit unofficial vote counts to the Commonwealth.

20.    In Pennsylvania, registered voters may vote by mail, either as an "absentee elector," if they satisfy prescribed conditions, like current military

service or absence from jurisdiction on Election Day, or as a "mail-in" elector if they apply timely for a ballot, <u>See</u> 25 P.S. §§ 3146.1 and 3150.11, respectively[3].

21.     Under Pennsylvania law, identical procedures govern how voters apply for, complete and return both absentee and mail-in ballots. Under the Pennsylvania Election Code, registered voters may request an absentee ballot, if they fulfill the requirements for voting absentee, or any registered voter may request a mail-in ballot from their county board of elections. Pennsylvania mail ballot applications require the voter to provide their name, address of registration, and proof of identification, 25 P.S. §§ 3146.2, 3150.12.

22.     Proof of identification includes either a Pennsylvania driver's license number or the last 4 digits of the voter's social security number. 25 P.S. § 2602(z.5)(3). Once the county elections board verifies the voter's identity and eligibility, they send a mail-ballot package that contains: 1) the ballot; 2) a "secrecy envelope" marked with the words "Official Election Ballot"; and 3) a pre-addressed outer return envelope that contains the voter declaration prescribed by law, which the voter must sign and date. The packet also contains instructions to the voter for marking their ballot and submitting it properly.

---

[3] The Commonwealth Court recently ruled that "no-excuse" mail-in voting violates the Pennsylvania Constitution. See <u>McLinko v. Commonwealth of Pennsylvania, Department of State, et al.</u>, 244 M.D. 2021 (Pa. Comm. Ct. 2021). The matter is currently on appeal to the Pennsylvania Supreme Court.

23.     Mail-ballot voters mark their ballot, place it in the secrecy envelope, and then place the secrecy envelope in the outer return envelope . Id. §§ 3146.6(a) and 3150.16(a).

24.     The purpose of the "secrecy envelope" is not to verify that the voter is eligible or that the ballot is timely received; rather, it is to protect the identity of the voter, their party affiliation and/or for whom the elector has voted.  See Pa. Democratic Party v. Boockvar, 238 A.3d 345, 48 (Pa. 2020)(discussing the legislative intent behind the secrecy envelope requirement).

25.     Currently, Pennsylvania is 1 of only 17 U.S. States and territories that require the use of a "secrecy" envelope or sleeve for a mail-in ballot[4], yet there are 26 states and territories that offer no-excuse absentee voting[5].

26.     The voter delivers the entire package by mail or by hand to their county elections board, and delivery is timely if made by 8:00 p.m. on Election Day. Id. §§ 3146.6(c) and 3150.16(c).

27.     However, military and overseas ballots are deemed timely submitted if received by the county board by 5:00 p.m. on the seventh (7th) day following the election.  See 25 Pa.C.S. 3511.

---

[4] https://www.ncsl.org/research/elections-and-campaigns/vopp-table-13-states-that-are-required-to-provide-secrecy-sleeves-for-absentee-mail-ballots.aspx
[5] https://www.ncsl.org/research/elections-and-campaigns/vopp-table-1-states-with-no-excuse-absentee-voting.aspx

28. Timely absentee and mail-in ballots that county boards of elections have verified consistent with the procedures set forth in § 3146.8(g)(3), that have not been challenged, and for which there is no proof that the voter died prior to Election Day are counted and included with the election results. Id. § 3146.8(d), (g)(4).

29. Each county board of elections is then required to submit unofficial returns to the Secretary of the Commonwealth by 5:00 p.m. on the Tuesday following the election. Id. at 1404(f)

30. Whether the voter includes the "secrecy envelope" does not affect either the timeliness of the ballot's return, the Election Boards' verification of timeliness or the eligibility of the voter to cast the ballot.

31. Likewise, delivery of a voter's timely-mailed ballot beyond election day at 8 p.m., but prior to when military and overseas ballots are due and prior to when the election boards are required to submit unofficial vote counts to the Commonwealth does not affect the eligibility of the voter, nor does it interfere with the election boards' ability to timely count votes and submit the information to the Commonwealth.

32. Moreover, it is not fault of the voter who timely mails their ballot to the elections' office, but rather an overworked and understaffed USPS that that failed to deliver said ballots in time to be counted.

33. Indeed, Defendant Chapman advised that, referring to mail-in ballot voters, "They definitely don't want to drop that ballot into the mailbox too close to May 17, because we want to assure that their vote is counted." Chapman reminded voters that deliveries are currently taking about three days.

https://www.inquirer.com/news/pennsylvania-mail-in-voting-ballot-law-20220505.html

34. Despite Defendant Chapman's acknowledgment in a newspaper interview of mail delays, and the possibility that mail-in ballots may not be counted if they are mailed "too close to May 17", the Secretary of the Commonwealth's office did not release any official guidance, declaration or order to notify the public that it would take three (3) days for a mail-in ballot to be delivered.

35. In addition, it is respectfully submitted that the ongoing pandemic, deemed a natural disaster, remains a driving force behind a surge in mail-in ballots requested[6].

36. Indeed, for the May 17, 2022 primary, over 831,000 mail-in ballots were requested, representing roughly 10% of all ballots cast in the election.

---

[6] Lehigh County still averages approximately 126 new COVID infections per day; and Northampton County averages 123 new COVID infections per day. https://www.nytimes.com/interactive/2021/us/lehigh-pennsylvania-covid-cases.html

https://www.inquirer.com/news/pennsylvania-mail-in-voting-ballot-law-20220505.html

37. Twenty-one states and territories accept mail-in ballots received after election day, so long as they were postmarked before election day.

https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx

38. In any one of those states or territories, Plaintiffs 2's ballots would have been counted.

## V. CLAIMS

**Count I: Rejection of Ballots for Immaterial Errors or Omissions in Violation of the Materiality Provision of the Civil Rights Act**
**(52 U.S.C. § 10101(a)(2)(B), 42 U.S.C. § 1983)**

**(Lack of Secrecy Envelope)**

39. Plaintiffs 1 rely upon all the paragraphs of this Complaint, which are incorporated into this Count I as if fully restated here.

40. The Materiality Provision of the Civil Rights Act ("CRA") prohibits disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (formerly codified at 42 U.S.C. § 1971).

41. The CRA directs that "vote" in this context means "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." Id. §§ 10101(a)(3)(A), 10101(e).

42. Defendant's disqualification of Plaintiffs' ballots constitutes denial of Plaintiffs' fundamental right to vote by denying their ability to cast a ballot or have it "counted and included in the appropriate totals of votes cast" in the 2021 election. Id.

43. Doing so based solely on the failure to include a "secrecy envelope" constitutes a denial of the right to vote "because of an error or omission on [a] record or paper relating to . . . [an] act requisite to voting," in violation of the Materiality Provision because omission of the "secrecy envelope" is "not material in determining whether" Plaintiffs were "qualified under [Pennsylvania] law to vote." Id. § 10101(a)(2)(B).

44. In Pennsylvania, the state constitution establishes the only "qualifications" needed to "be entitled to vote at all elections." To qualify as an eligible voter, each individual is only required to be: a citizen of the United States; over the age of eighteen (as modified by the Twenty-Sixth Amendment to the U.S.

Constitution); a resident of the Commonwealth of Pennsylvania; and a resident of the election district in which the person offers to vote. See Pa. Const. Art. VII, § 1.

45. The failure to include a "secrecy envelope" bears no relation to voter qualification in Pennsylvania, especially where there is no question that the Election Boards timely received the ballots before the voting deadline.

46. A voter's failure to include a "secrecy envelope" is not material to determining their qualification to vote.

47. As set forth *supra*, Pennsylvania law requires each mail-in voter to demonstrate eligibility and qualification to vote prior to being issued a mail-in ballot. See 25 P.S. §§3146.2, 3150.12. Each Plaintiff was qualified to vote under the criteria set forth in the Pennsylvania Constitution, applied for a mail-in ballot, and received one prior to the election deadline.

48. Each Plaintiff completed their mail-in ballots in all material respects, omitting only the "secrecy envelope", and submitted their ballots to the Election Board pursuant to the terms of the Election Code prior to the deadline for submission of mail-in ballots.

49. It is undisputed that the 117 Lehigh and Northampton County mail-in ballots that did not include the "secrecy envelope", including Plaintiffs 1's ballots, were timely received by the Election Board prior to the 8:00 p.m. deadline on election day.

50. The rejection of otherwise-valid ballots for immaterial errors or omissions is contrary to the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and will result in the disenfranchisement of over 100 Lehigh and Northampton County voters who submitted timely mail-in ballots for the 2022 election, unless enjoined by this Court.

**Count II: Undue Burden on the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments to the United States Constitution**
**(U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983)**

**(Lack of Secrecy Envelope)**

51. Plaintiffs 1 rely upon all the paragraphs of this Complaint, which are incorporated into this Count II as if fully restated here.

52. The requirement that mail-in voters utilize a "secrecy envelope" is a superfluous requirement that adds to the burdens of voting. However slight this additional burden may be, its enforcement will result in denial of the fundamental right to vote for 117 Lehigh and Northampton County voters, including Plaintiffs 1.

53. Under the First and Fourteenth Amendments to the United States Constitution, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the plaintiff's right to vote against "the precise interests put forward by the State as justifications for the burden

imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick v. Takushi, 504 U.S. 428, 434 (1992) (internal quotation marks omitted); Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). Even the slightest of burdens on the fundamental right to vote must be supported by some "important regulatory interest" for the state. Id.

54. The use of a "secrecy envelope" is not supported by any articulable state interest, let alone an important one, especially given the other requirements of Pennsylvania's Election Code. Indeed, the legislative intent of the use of a "secrecy envelope" is to protect the voter's privacy. If the voter chooses to not utilize the "secrecy envelope" or simply fails to do so, it simply constitutes the voter's waiver of their right of privacy. There is no state interest implicated.

55. The use of a "secrecy envelope" is unnecessary to confirm a voter's "desire to cast [a mail-in ballot] in lieu of voting in-person," does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot," and is unnecessary to "ensure[] the elector completed the ballot within the proper time frame." See In re 2020 Canvass, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting).

56. Even if Pennsylvania had "important regulatory interests" in requiring voters to use a "secrecy envelope" or else lose their fundamental right to vote, those interests do not justify "'the burden imposed by its rule,' taking into

consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights." <u>Burdick</u>, 504 U.S. at 434 (quoting <u>Anderson</u>, 460 U.S. at 788-89). Whatever regulatory interest Pennsylvania has in requiring voters to utilize a "secrecy envelope", it does not justify the irretrievable deprivation of Plaintiffs' fundamental right to vote. This burden is particularly unjustified where Lehigh and Northampton Counties did not notify Plaintiffs that their ballots would be rejected solely due to a lack of "secrecy envelope", and did not offer any opportunity to cure.

**Count III. Denial of Plaintiffs' Voting Rights Without Pre-Denial Notice and Opportunity to Cure Ballot Errors in Violation of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution (U.S. Const. Amend. XIV, 42 U.S.C. § 1983)**

**(Lack of Secrecy Envelope)**

57. Plaintiffs 1 rely upon all the paragraphs of this Complaint, which are incorporated into this Count III as if fully restated here.

58. Pennsylvania has conferred on all eligible voters a constitutionally protected liberty interest in casting ballots by mail. See 25 P.S. § 3150.11; see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies.").

59.     At a minimum, procedural due process requires that the State provide the voter pre-deprivation notice and an opportunity to be heard before being denied their protected liberty interest. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Because there is no possibility of a meaningful post-deprivation process when a voter's ballot is rejected—there is no way to vote after an election has passed— sufficient pre-deprivation process is the constitutional imperative. See, e.g., Martin v. Kemp, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) ("Given that the State has provided voters with the opportunity to vote by absentee ballot, the State must now recognize that the "privilege of absentee voting is certainly deserving of due process.") (internal citation and quotations omitted).

60.     Neither Pennsylvania law nor the Lehigh or Northampton County Election Boards' procedures provide any process for notifying voters of any issue with the omission of a "secrecy envelope" with their ballot.

61.     Defendants' failure to ensure mail voters are provided with notice and an opportunity to cure defects in their absentee and mail-in ballot envelopes prior to rejecting those ballots fails to meet minimum requirements of procedural due process and is therefore unconstitutional.

62.     Under the framework set forth in Mathews, courts balance three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and

the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

63.     Balancing those factors here demonstrates that Defendant Election Boards, by rejecting mail-in ballots without "secrecy envelopes" without providing notice of rejection and opportunity to cure, will deprive Plaintiffs of their fundamental right to vote in violation of the Due Process Clause. First, the private interest at stake is of the utmost constitutional importance—the fundamental right to vote. See Harper v. Va. Bd. of Elections, 383 U.S. 663, 667 (1966). Second, risk of erroneous deprivation is self-evident, as over 100 voters who timely submitted ballots and thought their votes would be counted are instead disenfranchised. And third, there is no legitimate government interest to be furthered by enforcing the "secrecy envelope" requirement.

64.     Absent an order issued by this Court, Plaintiffs 1 and over 100 other Pennsylvania voters face deprivation of their fundamental right to vote without due process of law.

**Count IV: Rejection of Ballots for Immaterial Errors or Omissions in Violation of the Materiality Provision of the Civil Rights Act (52 U.S.C. § 10101(a)(2)(B), 42 U.S.C. § 1983)**

**(Timely Mailed; Untimely Received)**

65. Plaintiffs 2 rely upon all the paragraphs of this Complaint, which are incorporated into this Count I as if fully restated here.

66. The Materiality Provision of the Civil Rights Act ("CRA") prohibits disqualifying voters "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B) (formerly codified at 42 U.S.C. § 1971).

67. The CRA directs that "vote" in this context means "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." Id. §§ 10101(a)(3)(A), 10101(e).

68. Defendant's disqualification of Plaintiffs' ballots constitutes denial of Plaintiffs' fundamental right to vote by denying their ability to cast a ballot or have it "counted and included in the appropriate totals of votes cast" in the 2021 election. Id.

69. Doing so based on an agency of the federal government's (i.e. the USPS's) failure to deliver timely mailed ballots on or before 8 p.m. on election

day, and the Commonwealth's own failure to notify voters of delays in that federal agency's processes and procedures, constitutes a denial of the right to vote "because of an error or omission on [a] record or paper relating to . . . [an] act requisite to voting," in violation of the Materiality Provision because omission of the "secrecy envelope" is "not material in determining whether" Plaintiffs were "qualified under [Pennsylvania] law to vote." Id. § 10101(a)(2)(B).

70. In Pennsylvania, the state constitution establishes the only "qualifications" needed to "be entitled to vote at all elections." To qualify as an eligible voter, each individual is only required to be a citizen of the United States; over the age of eighteen (as modified by the Twenty-Sixth Amendment to the U.S. Constitution); a resident of the Commonwealth of Pennsylvania; and a resident of the election district in which the person offers to vote. See Pa. Const. Art. VII, § 1.

71. The failure of the federal and Commonwealth governments bear no relation to voter qualification in Pennsylvania, especially where there is no question that the ballots were mailed before election day and were received prior to the due date for military and overseas ballots and before unofficial vote totals were due to the Commonwealth.

72. The failure of the USPS to deliver voters' timely mailed ballots on or before 8 pm on election day is not material to determining their qualification to vote.

73. As set forth *supra*, Pennsylvania law requires each mail-in voter to demonstrate eligibility and qualification to vote prior to being issued a mail-in ballot. See 25 P.S. §§3146.2, 3150.12. Each Plaintiff was qualified to vote under the criteria set forth in the Pennsylvania Constitution, applied for a mail-in ballot, and received one prior to the election deadline.

74. The rejection of otherwise-valid ballots for immaterial errors or omissions is contrary to the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), and will result in the disenfranchisement of over 100 Lehigh and Northampton County voters who timely mailed ballots for the 2022 election, unless enjoined by this Court.

**Count V: Undue Burden on the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments to the United States Constitution**
**(U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983)**

**(Timely Mailed; Untimely Received)**

75. Plaintiffs 2 rely upon all the paragraphs of this Complaint, which are incorporated into this Count II as if fully restated here.

76. The requirement that mail-in voters' ballots must be received by 8 pm on election day adds to the burdens of voting. However slight this additional burden may be, its enforcement will result in denial of the fundamental right to vote for 143 Lehigh and Northampton County voters, including Plaintiffs 2.

77. Indeed, the only aspect of said requirement that is under a voter's control is whether the ballot was placed in the mail prior to election day.

78. Voters have no choice but to rely on the orderliness and efficiency of the USPS for their ballot to be delivered on time. It is impossible for a voter to guarantee that their vote will be delivered on time, no matter when it is mailed, and a voter has absolutely no control over when the USPS will deliver their ballot.

79. Under the First and Fourteenth Amendments to the United States Constitution, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the plaintiff's right to vote against "the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." Burdick v. Takushi, 504 U.S. 428, 434 (1992) (internal quotation marks omitted); Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). Even the slightest of burdens on the fundamental right to vote must be supported by some "important regulatory interest" for the state. Id.

80. While delivery on or before 8 pm on election day may be an articulable state interest, it is not an important one. Indeed, military and overseas ballots are deemed timely submitted if received by the county board by 5:00 p.m. on the seventh (7th) day following the election. See 25 Pa.C.S. 3511.

81. Additionally, each county board of elections is then required to submit unofficial returns to the Secretary of the Commonwealth by 5:00 p.m. on the Tuesday following the election. Id. at 1404(f).

82. Accordingly, vote counting by the Election Boards continues for seven (7) days beyond election day.

83. Moreover, twenty-one states and territories accept mail-in ballots received after election day, so long as they were postmarked before election day. https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx

84. In any one of those states or territories, Plaintiffs 2's ballots would have been counted.

85. The receipt by the Election Boards of a mail-in ballot on or before 8 pm on election day is unnecessary to confirm a voter's "desire to cast [a mail-in ballot] in lieu of voting in-person," does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot," and is unnecessary to "ensure[] the elector completed the ballot within the proper time frame." See In re 2020 Canvass, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting).

86. Even if Pennsylvania had "important regulatory interests" in requiring voters to have their mail-in ballots received on or before 8 pm on election day, or else lose their fundamental right to vote, those interests do not justify "'the burden

imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights." <u>Burdick</u>, 504 U.S. at 434 (quoting <u>Anderson</u>, 460 U.S. at 788-89). Whatever regulatory interest Pennsylvania has in rejecting mail-in ballots that do not arrive by 8 pm on election day, but that were mailed before election day, it does not justify the irretrievable deprivation of Plaintiffs' fundamental right to vote.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and provide the following relief:

1.      Declaration that enforcement of the "secrecy envelope" requirement under 25 Pa. Stat. 3150.16(a) to reject timely submitted mail-in ballots based solely on a voter's failure to include a "secrecy envelope":

    a.      Violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B); and

    b.      Violates the First and Fourteenth Amendments to the United States Constitution on their face.

2.      Declaration that rejecting a timely mailed, but untimely received ballot:

    a.      Violates the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B); and

b.      Violates the First and Fourteenth Amendments to the United States Constitution on their face.

3.      Declaration that Defendants' failure to ensure mail-in voters are provided with pre-deprivation notice and an opportunity to cure defects in their absentee and mail-in ballot envelopes prior to rejecting those ballots fails to meet minimum requirements of procedural due process and is therefore unconstitutional.

4.      Injunctive relief preliminarily and permanently enjoining Defendants and all persons acting on its behalf from:

a.      Rejecting or otherwise not counting the 117 otherwise-valid mail-in ballots timely submitted by 8:00 p.m. on Election Day based solely on the failure to include a "secrecy envelope";

b.      Rejecting or otherwise not counting the 143 otherwise-valid mail-in ballots timely mailed prior to Election Day but not received by Election Boards until after 8 pm on Election Day; an

c.      Certifying the 2022 primary election in Lehigh and Northampton Counties without counting such mail-in ballots.

4.      Award Plaintiffs costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

5.      Grant such other relief as this Court deems just and appropriate.

Respectfully submitted,


**MOBILIO WOOD**


**BY   /S/ MATTHEW MOBILIO**

**DATED: 5.31.22**                    BY: MATTHEW MOBILIO, ESQUIRE
COUNSEL FOR PLAINTIFF
E-MAIL: matt@mobiliowood.com
I.D. # 209439
609 W. HAMILTON STREET
SUITE 301
ALLENTOWN, PA 18101
PHONE:  (610) 882-4000
FAX:      (866) 793-7665